Argued April 6, reversed July 1, 1976

LEE, *Appellant—Cross-Respondent,*

*v.*

WOOD PRODUCTS CREDIT UNION,

*Respondent-Cross-Appellant.*

551 P2d 446

*Roger Gould,* of Bedingfield, Joelson, Gould and Barron, Coos Bay, argued the cause and filed briefs for appellant/cross-respondent.

*Malcolm J. Corrigall,* of McNutt, Gant & Ormsbee, Coos Bay, argued the cause and filed briefs for respondent/cross-appellant.

Before O'Connell, Chief Justice*, and McAllister, Denecke**, Holman***, Tongue, Howell and Bryson, Justices.

HOWELL, J.

*Chief Justice when case was argued.
**Chief Justice when case was decided.
***Did not participate in decision of this case.

## HOWELL, J.

Plaintiff filed this action for wrongful conversion of his automobile by the defendant credit union. A jury awarded plaintiff both general and punitive damages. However, on defendant's motion, the trial court granted a judgment n.o.v. as to the punitive damages. On appeal, plaintiff assigns as error the elimination of punitive damages from the judgment, and defendant cross-appeals, contending that it was entitled to a directed verdict on the underlying issue of conversion.

In March 1972 plaintiff borrowed approximately $3,000 from the defendant's branch office in North Bend to purchase an automobile. Defendant was granted a security interest in the automobile, and plaintiff agreed to repay the loan at $142 per month, payable on the 20th day of each month. The agreement did not contain a "time is of the essence" clause.

Thereafter, plaintiff missed various monthly payments which he eventually made up, although at one time he was two months delinquent. Plaintiff missed the March 1974 payment, but in April 1974 plaintiff was again current. Plaintiff did not make the May 20 payment on time, and some time later a collection notice was sent. The notice merely stated that the account was past due and that plaintiff owed a certain amount to bring the account current. On June 18 an attempt was made to contact plaintiff at his home, but the defendant's employee apparently was told that plaintiff had moved. On June 19 defendant decided to repossess plaintiff's auto. On June 23 plaintiff mailed his May payment to defendant's head office in Springfield. The payment was accepted, but defendant's office in North Bend apparently was not notified until about a week later. At a meeting on June 28 plaintiff was advised that defendant wanted either payment of the entire balance or return of the car. Plaintiff at that time tendered the June payment, but defendant refused it. Approximately one month later, on July 23, defendant's branch manager found plaintiff's car

parked near a garage and had it towed away. In the intervening period, plaintiff had made several additional tenders of the June payment.

Under the facts in this case the defendant was not entitled to repossess plaintiff's automobile for failure to make the monthly payments on the required date without first giving plaintiff reasonable notice of its intention to insist on prompt payments in the future.

■ The law is well established that, even under an agreement with a time essence clause (which this agreement did not contain), a creditor or vendor cannot declare the debtor in default after repeatedly accepting delinquent payments and then foreclose or repossess without first giving the debtor reasonable notice of its intention to insist on strict compliance in the future. *Hall v. Work,* 223 Or 347, 354 P2d 837, 366 P2d 533 (1960); *Grider v. Turnbow,* 162 Or 622, 94 P2d 285 (1939); *Paine v. Meier & Frank Co.,* 146 Or 40, 27 P2d 315 (1933), 29 P2d 531 (1934). The reason for the rule is that it is inequitable for a creditor or a vendor to repeatedly accept delinquent payments, thereby lulling the debtor into a course of action, and then foreclose or repossess the property without first giving the debtor or buyer reasonable notice that it is going to insist that future payments be made in strict accordance with the terms of the agreement. *See Paine v. Meier & Frank Co., supra.*

■ In this case we have a record of consistently late payments being accepted over a substantial period of time. The most recent correspondence prior to the period in question was a letter dated April 17, 1974, in which one of defendant's employees, after first expressing regret about the illness of plaintiff's mother, requested plaintiff to come into defendant's office and discuss plans to "eliminate this delinquency." The record shows that the account was then brought current. There was never any subsequent notice of the defendant's intention to insist upon strict compliance in the future. When plaintiff fell behind again in May,

a routine statement was sent notifying plaintiff that "your loan payments are past due." No further notice was given. At the time the decision to repossess was made, plaintiff was only one payment behind. Moreover, plaintiff had tendered all payments due on his account prior to the actual repossession. Under these circumstances, we conclude that defendant was not entitled to a directed verdict on the issue of conversion of plaintiff's auto.

■■ We also conclude that the trial court erred in striking the jury's award of punitive damages in this case. It has frequently been stated that not every conversion entitles the plaintiff to punitive damages. *See, e.g., Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 545 P2d 1374 (1976); *Hall v. Work, supra; Perry v. Thomas et al.,* 197 Or 374, 253 P2d 299 (1953). Punitive damages can be justified only under a theory of deterrence. Therefore, if the conversion is merely a technical one and the converter acts under a good faith, albeit mistaken, belief that he is legally entitled to proceed in that fashion, an award of punitive damages is inappropriate. *Lewis v. Devils Lake Rock Crushing Co., supra; Perry v. Thomas et al., supra;* Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175, 226 (1965) (" 'Making an example' will not deter future good-faith converters who honestly believe that they have a right to act.").

■ Each case must turn on its own facts. The record in this case contains no direct evidence that defendant's branch manager acted in bad faith in repossessing plaintiff's automobile. However, there was evidence from which the jury could have inferred that the actions of defendant's manager in repossessing the automobile were motivated by ill will and were taken with reckless disregard of plaintiff's rights. There was evidence that when plaintiff went to defendant's office and attempted to tender the June payment to defendant's branch manager, the manager refused the installment and insisted upon payment of the entire

balance. Plaintiff testified that, in the course of a rather heated argument, the manager told him:

> "We do not want your business any longer, we want you to take your business elsewhere. Either you pay up the car now or you don't get your car at all."

When plaintiff tried to leave, defendant's employees unsuccessfully attempted to forcibly block plaintiff's car from leaving the driveway. After plaintiff eluded these efforts, defendant's manager called the police, reported the incident to them, and signed a stolen automobile report, which was later withdrawn. Plaintiff then made several more unsuccessful attempts to tender the single payment which was due at the time. Finally, almost a month later, defendant's manager had plaintiff's car towed away and impounded. The car was taken, over the garageman's objections, from in front of a garage where plaintiff had taken it for some repairs.

The jury was properly instructed that they could not award punitive damages if they found that the defendant acted in good faith. Defendant's manager testified that at the time he repossessed plaintiff's automobile he felt that "we had the right at that time to repossess the car." However, the jury could have disbelieved this testimony and, on the basis of his preceding conduct, could have concluded that the manager's actions were motivated by ill will toward the plaintiff and that he persisted in repossessing plaintiff's vehicle with reckless disregard for plaintiff's rights.

Since there is evidence to support the jury's verdict, we conclude that the trial court erred in setting aside the award of punitive damages.

Reversed.