Argued April 7, reversed and remanded July 15, 1976

SOLTIS et ux, *Respondents,*
*v.*
LILES et ux, *Appellants.*
551 P2d 1297

*James C. Wilson, Jr.,* Central Point, argued the cause for appellants. With him on the brief was Joel B. Reeder, Medford.

*Patrick Ford,* of Ford & Cowling, Medford, argued the cause for respondents.

Before O'Connell, Chief Justice*, and McAllister, Denecke**, Holman, Tongue, Howell and Bryson, Justices.

HOWELL, J.

*Chief Justice when case was argued.
**Chief Justice when case was decided.

## HOWELL, J.

Plaintiffs brought this suit seeking strict foreclosure of a real estate installment sale contract. The trial court issued a decree granting strict foreclosure, and defendants appeal to this court.

Plaintiff husband,[1] a licensed real estate broker, entered into an earnest money agreement with the defendants during the fall of 1971 for the sale of some property which he was about to purchase, or had recently purchased, from one of his clients.[2] On November 12, 1971, plaintiff and defendants executed a land sale contract pursuant to which defendants paid $1,000 down and agreed to pay another $10,000 plus interest at the rate of $120 per month. Payments were due on the 15th of each month and were to be paid into an escrow account.

Defendants were frequently several days late in making payments throughout the payment period. In April, 1973, defendants missed an entire payment and fell one month behind. At about the same time, defendants' relatives took possession of the property and agreed with defendants to make the payments due on the contract. A double payment was then made in May, and thereafter payments remained fairly current until October, when another payment was missed. A double payment on November 23 brought the contract up to date once more. In December, full payment was not made until the 27th. The January 1974 payment was made on time, but in February there was only a partial payment of $60, and it was late. No payments were made in March.

On March 20, 1974, plaintiff's attorney sent defendants a letter which purported to declare a default and

[1] Further references to plaintiffs in this opinion will be to plaintiff husband alone.

[2] The record discloses that plaintiff purchased the property from his client for $9,000 and sold it to defendants for $11,000. The record also indicates that plaintiff had his real estate license suspended for two weeks as a result of this transaction.

to accelerate the entire balance due under the contract. Apparently, defendants had not realized that their relatives were delinquent in their payments, and on April 10, 1974, defendants themselves made a $200 payment which again brought them current. This payment was accepted by the escrow agent who, under the terms of the contract, was plaintiff's agent for this purpose.[3]

On April 16, 1974, one day after the April 15 payment was due, plaintiff wrote to the escrow agency and instructed them not to accept any future payments made on the contract. The next day, April 17, he issued a check to the escrow agency for $200 and asked that the money be returned to the defendants as a "refund" of their April 10 payment. On April 22, defendants tendered the April 15 payment to the escrow agent, but it was refused.[4] On June 25, 1974, plaintiff's attorney wrote to the defendants "renewing [plaintiff's] claim of default" and notifying them that an action to foreclose would be filed unless the total balance due on the contract was paid within 10 days.

During April, May, June and July, defendants sought to negotiate with the plaintiff and attempted to sell the property to various third parties, but plaintiff would not cooperate.[5] On July 27, plaintiff filed this suit seeking strict foreclosure of defendants' interest in the property as well as $2,000 in attorney fees. At

[3]The contract provided that: "The escrow agent shall receive for Seller's account the balance of the installment payments provided for herein."

[4]Sometime during this same period, defendants received the $200 "refund" check and deposited it in their account. Rather than accepting the check and depositing it, defendants should probably have tendered it back to plaintiff once again. However, under the circumstances of this case, it is clear that such a re-tender would have been a useless act, and, therefore, the failure to do so is not fatal. *See Clarno v. Grayson,* 30 Or 111, 46 P 426 (1896).

[5]Plaintiff refused to allow defendants to assign their contract to a buyer with whom they had entered into an earnest money agreement and later refused to disclose the cash payoff figure when defendants procured a cash buyer. During the same period, plaintiff offered defendants $200 for a quitclaim deed relinquishing their interest in the property. Defendants' equity was worth approximately $2,000 at the time.

approximately the same time, defendants' relatives moved out of the house, and plaintiff re-entered and padlocked the premises.

In his complaint, plaintiff charged that defendants were in default for failure to make the payments due under the contract and for failure to pay the property taxes when due. Defendants' answer alleged that plaintiff was guilty of misconduct in several respects with regard to this transaction and had come into equity with "unclean hands." Defendants' answer also alleged that they had mistakenly believed that their relatives were making the payments on time, that they did not know they were in default until notified by plaintiff, and that it would be "unjust and inequitable" to foreclose the contract because of this mistake. Defendants' answer further alleged that acceptance of the late payments by the escrow agent cured any default and that plaintiff's actions in closing down the escrow violated the terms of the contract and prevented the defendants from further performing. On the basis of essentially the same allegations, defendants also filed several countersuits seeking rescission of the contract and the return of all payments previously made, general and punitive damages for breach of contract, and attorney fees.

The trial court found that defendants were in default by reason of their failure to make the payments when due under the contract and because of their failure to pay the property taxes on time. The court then issued a decree granting strict foreclosure but allowing defendants 60 days in which to redeem the property by paying the balance due under the contract, plus interest, and $600 in attorney fees. Defendants appealed from this decree but, after the expiration of 60 days and while this appeal was pending, the court issued a final decree foreclosing all of defendants' interest in the property. Defendants have also appealed from this subsequent decree.

On appeal, defendants contend that the trial court

erred in finding that they were in default under the contract, in failing to find that plaintiff had breached the contract, in entering a final decree of foreclosure while an appeal from the initial decree was pending, and in awarding plaintiff attorney fees. Because of our resolution of this case, only the first two of these contentions will be discussed in this opinion.

■ The initial question to be decided is whether defendants were in default on April 16, 1974, at which time plaintiff closed down the escrow account and instructed the escrow agent to refuse any subsequent payments. Since the record clearly shows that defendants had paid the property taxes through May 15, 1974, we conclude that they were not in default for failure to pay those taxes. Similarly, since the escrow agent accepted the $200 payment on plaintiff's behalf on April 10, we find that thereafter the February and March payments were no longer delinquent. However, under the terms of the contract, another payment was due on April 15, and this payment was not actually tendered until April 22. Thus, when plaintiff closed down the escrow on April 16, defendants were one day behind in making a payment.

■■ The contract contained a time is of the essence clause and provided that any failure to make payment on time would be deemed a default. Normally, the fact that defendants were one day late would be sufficient to place them in default under such a contract. However, defendants contend that plaintiff's conduct, as well as that of the escrow agent, in repeatedly accepting previous late payments operated as a waiver of the time is of the essence provision of the contract. Under the law in this state, it is clear that a vendor or creditor who has repeatedly accepted late payments in the past cannot declare a default without first giving the debtor reasonable notice of his intention to insist upon strict compliance with the terms of the contract in the future. The vendor or creditor must also allow the debtor a reasonable opportunity to cure any past delinquencies. *See, e.g., Fisher v. Tiffin,* 275 Or 437,

551 P2d 1061 (1976); *Lee v. Wood Products Credit Union,* 275 Or 445, 551 P2d 446 (1976); *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971); *Grider v. Turnbow,* 162 Or 622, 94 P2d 285 (1939).

██ Plaintiff seeks to avoid the effect of this rule by relying on another contract provision which purports to exclude any possibility of waiver:

> "WAIVER. Failure by Seller at any time to require performance by Buyer of any of the provisions hereof shall in no way affect Seller's rights hereunder to enforce the same, nor shall any waiver by Seller of any breach hereof be held to be a waiver of any succeeding breach, or a waiver of this non-waiver clause."

In this jurisdiction, as well as in most others, such non-waiver provisions are ineffective and do not prevent the promisor from waiving the conditions of the contract through his conduct. *See Fisher v. Tiffin, supra,* and cases cited therein; *Hall v. Work,* 223 Or 347, 354 P2d 837, 366 P2d 533 (1960). *See also* 3A Corbin on Contracts 531, § 753 (rev. ed. 1960). Therefore, we find that the conduct of plaintiff, as well as that of his escrow agent, in repeatedly accepting late payments was sufficient to waive the time is of the essence provision of the contract and to require plaintiff to give reasonable notice of his intention to insist upon strict compliance in the future before declaring defendants in default.

It is also significant that in this case there was another contract provision which limited plaintiff's power to demand that the escrow be terminated to instances in which the defendants had fallen at least 30 days behind in their payments. Thus, the parties had agreed in their contract of sale that:

> "* * * If Buyer fails to pay any installment before the expiration of thirty (30) days after the due date thereof, the escrow agent is authorized to surrender to Seller, upon demand and without notice to Buyer, all of the documents specified in the preceding paragraph, thereby terminating the escrow."

The evidence shows that the defendant buyers were at most one day delinquent at the time plaintiff ordered the escrow agent to close the escrow. Therefore, plaintiff's action was in violation of the terms of the agreement itself.

■■ Under these circumstances, we conclude that the defendants were not in default on April 16, 1974, and that plaintiff wrongfully breached the contract by instructing the escrow agent to terminate the escrow at that time. Since this was a substantial breach which prevented further performance by the defendants, they were justified in seeking rescission. *Scott v. Fredericksen,* 239 Or 225, 396 P2d 219 (1964); *Mohr v. Lear,* 239 Or 41, 395 P2d 117 (1964). Therefore, we hold that defendants are entitled to a rescission of the contract and a return of all of the previous payments, including taxes, together with interest thereon.[6] However, we also conclude that plaintiff should be allowed to offset against these amounts the fair rental value of the property during the time that defendants and their relatives were actually in possession and had the beneficial use of the property.[7] *See Swick v. Mueller et ux,* 193 Or 668, 238 P2d 717 (1952); *Mitchell v. Hughes,* 80 Or 574, 157 P 965 (1916). *See also Grider v. Turnbow, supra.*

Reversed and remanded for further proceedings consistent with this opinion.

---

[6]Since defendants offered no evidence as to the amount of damages which they suffered as a result of plaintiff's breach, we need not consider what form of relief would have been appropriate had they done so.

[7]At about the same time that this suit was filed, defendants had their relatives move out of the house. Plaintiff then re-entered and padlocked the premises. There is no evidence that the defendants received any substantial benefit from the use of the property after this time.