In re Clark Paul **MOORE**, dba **Clark Moore Trucking, Janie Marie Moore, Debtor.**

**MACK FINANCIAL CORPORATION, a corporation, Plaintiff,**

v.

**Clark Paul MOORE dba Clark Moore Trucking, Robert W. Myers, Trustee, Defendants.**

Bankruptcy No. 381–00956.
Adv. No. 81–0305.

United States Bankruptcy Court,
D. Oregon.

Sept. 3, 1981.

 

William A. King, Beaverton, Or., for debtor, Clark Paul Moore.

Charles R. Markley and Mary E. Egan, Portland, Or., for Mack Financial Corp.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

On August 14, 1978 the debtor, Clark P. Moore entered into a retail installment contract with Mack Trucks, Inc. for a new 1978 Mack truck with dump box. The cash sale price was $53,600. Debtor made a down payment of $5,360.00. He was to pay the remaining balance and finance charge in monthly installments over five years. The terms of the contract stated that if the buyer should fail to pay any installment when due, the full amount of the balance remaining unpaid shall, at the option of the seller, become immediately due and payable. Thereon, the seller could take immediate possession of the truck without notice or hearing. The contract also contained a "time is of the essence" clause and a "non-waiver" provision. Seller also took a security interest in the truck.

On the same day, Mack Trucks, Inc., assigned the contract to Mack Financial Corporation. Mack Financial perfected its security interest in the truck by having listed itself as the security interest holder on the certificate of title.

On April 3, 1981, the debtor and his wife filed a petition for relief under chapter 13. On April 28, 1981, the first meeting of creditors was held. On May 14, 1981, a confirmation hearing on debtors' plan was held. Confirmation was denied. The debtors were given 15 days to file an amended plan or motion to convert. Mack made no appearance at the meeting or the hearing. On May 21, 1981, the debtors filed an amended plan. On June 16, 1981, Mack filed its complaint for relief from the automatic stay. On June 18, 1981, the adjourned confirmation hearing was held, and

the plan was confirmed. Again, Mack made no appearance.

Mack bases its request for relief from the automatic stay on the allegation that debtor's rights in the dump truck were completely terminated several days before the filing of the petition in bankruptcy and therefore debtor and the trustee have no interest in the truck. Mack's complaint raises three legal issues, one procedural and two substantive.

■ Mack's complaint was heard 33 days after the adjourned confirmation hearing on debtors' amended plan. At that hearing, which plaintiff did not attend, debtors' amended plan was confirmed. Based on its readings of §§ 1325(a), 1302, 363(e), and 1327, the court in In the Matter of Lewis, 7 BCD 105, 8 B.R. 132 (Bkrtcy.Idaho 1981) held that after the confirmation of a plan, the creditor cannot assert any other interest than that provided for him in the confirmed plan. All issues of adequate protection, lack of equity, and necessity of the property for effective reorganization of debtor's affairs could and should be raised at the confirmation hearing. Plaintiff attempts to distinguish this case by arguing that its complaint involves not a challenge to the confirmation of the plan, but the fact that the debtor's rights in the collateral had terminated before the petition in bankruptcy was ever filed. This may be a proper characterization of the issue in this proceeding. However, such issue still should have been brought forth at the confirmation hearing.

"The Order of Confirmation is thus res adjudicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation ... The only possible legitimate causes of action for relief from the stay after confirmation would relate to matters occurring after confirmation such as failure to receive periodic payments provided for in the plan or that debtor was willfully committing waste or failing to insure, ..." 7 BCD 105, 108, 8 B.R. 132, 137.

Plaintiff failed to raise the issue of debtor's lack of interest in the dump truck at both the original and the adjourned confirmation hearing. It is now estopped from raising that issue in this proceeding.

Even if plaintiff's objection had been timely, it would still not prevail on the substantive issues.

■ Plaintiff claims to have terminated the retail installment contract by a phone call by its attorney. At about 2:15 p. m. on April 1, 1981, plaintiff's attorney, Charles Markley, called Jill Ekerson, secretary for William King, debtors' attorney. Mr. Markley told Ms. Ekerson that Mack Financial had exercised its option to accelerate debtor's contract and that the entire balance owing under the contract was due at that time. Debtors' attorney, while admitting that the call was made, denies ever having received the message.

Plaintiff bases its right to immediate acceleration on debtor's failure to make timely payment. The retail installment contract stated that time was of the essence and that if the buyer should fail to pay any installment when due, the full amount of the balance remaining unpaid shall become immediately due and payable without prior notice or hearing.

"Time is of the essence" clauses are enforceable in Oregon. However,

"Under the law in this state, it is clear that a vendor or creditor who has repeatedly accepted late payments in the past cannot declare a default without first giving the debtor reasonable notice of his intention to insist upon strict compliance with the terms of the contract in the future. The vendor or creditor must also allow the debtor a reasonable opportunity to cure any past delinquencies." Soltis v. Liles, 275 Or. 537, 551 P.2d 1297 (1976). See also Lee v. Wood Products Credit Union, 275 Or. 445, 551 P.2d 446 (1976) which applies the above to retail installments contracts.

An examination of plaintiff's payment ledger cards (Plaintiff's Exhibits 3–A and

3–B) shows repeated acceptance of late payments. Debtor's first payment was six days late. Payments for April and September of 1980 seem to be skipped. Several times, first and second late notices were sent to the debtor. Debtor's last payment was made on February 19, 1981.

Plaintiff repeatedly accepted late payments from the debtor. Therefore, plaintiff waived its right to strict enforcement of its acceleration clause. Plaintiff had to give debtor reasonable notice of its intention to insist upon strict compliance with the terms of the contract and a reasonable opportunity to cure past delinquencies. Plaintiff did neither. At most, plaintiff gave notice of acceleration of the debt. It is doubtful whether such notice was "reasonable". Not even a letter confirming the phone call was sent.

■ Even plaintiff's non-waiver clause won't save its position:

"In this jurisdiction, as well as in most others, such non-waiver provisions are ineffective and do not prevent the promisor from waiving the conditions of the contract through his conduct." 275 Or. 537, 551 P.2d 1297.

Plaintiff's acceptance of late payments waived its "non-waiver" clause. Therefore, plaintiff failed to terminate the contract.

Even if plaintiff had given proper notice and terminated the contract, the debtor does not lose all of his interest in the truck. Section 79.5060 of ORS gives a debtor the right to redeem collateral for the amount of all the obligations secured by the collateral plus expenses. This right is terminated only by the sale of the collateral under ORS 79.5040 or strict foreclosure by the creditor under ORS 79.5050(2). This right of the debtor to redeem can be considered as a right of the creditor to receive a lump sum payment. Such rights can be modified under § 1322(b)(2).

Plaintiff asserts that the debtor has no interest in the collateral, relying on *In re Hospitality Associates*, 6 B.R. 778 (Bkrtcy. Or.1980). This case is not applicable because it deals with the lease of real property rather than the sale of personal property. Leases are governed by the law of real property. Sales of personal property are governed by the Uniform Commercial Code.

The above aside, plaintiff has waived its assertion that the contract was terminated. On April 30, 1981, plaintiff's attorney sent a letter to debtors' attorney. (Plaintiff's Exhibit 5). Plaintiff rejected debtors' proposed chapter 13 plan and was going to request that the trustee release the truck to Mack. However, if the debtor would revise his plan to reinstate the back payments and keep the payments up as per the original contract, plaintiff would not object. If debtor's rights to the truck were completely terminated as plaintiff alleges, plaintiff would not have the option of allowing payment under the plan.

For the above reasons, plaintiff's complaint for relief from the automatic stay is denied. The court will not however at this time dismiss the plaintiff's complaint. Should the debtor later default in the payments required by a confirmed plan, should the debtor default in other provisions of the security agreement which would affect the plaintiff's interest in the collateral such as maintenance of insurance coverage or other matters, and should the plaintiff, by reason thereof, consider that adequate protection is not being provided, the plaintiff may renew the request for relief contained in the complaint by the filing of a motion in this adversary proceeding.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 752.