# District Court of the Navajo Nation
### Judicial District of Shiprock, New Mexico

---

### Singleton's Mobile Home Sales, Inc., a New Mexico Corporation, Petitioner,
### v.
### Bernice Begay Benally, Respondent.
### Decided January 24, 1997

---

## JUDGMENT AND ORDER

Judge Lorene Ferguson presiding.

THIS MATTER was heard on November 14, 1995 at which time this Court made the following FINDINGS:

1. Bernice Begay Benally and Jerome Begay entered into a contract with Singleton's Mobile Home for a 1973 used mobile home in February, 1982.

2. The terms of the contract required Ms. Benally and Mr. Begay to make monthly payments in the amount of $295.62 up to January, 1990 for a total of $30,380.00, which included interest at 23% annually.

3. Ms. Benally and Mr. Begay separated in 1991 and Ms. Benally was left to pay off the contract.

4. Since the contract was entered, Ms. Benally learned that she had a disabiling disease, scleroderma, which impaired her ability to work and she has been receiving Social Security disability and Supplemental Security Income checks in the amount of $441.00 a month.

5. Ms. Benally was not able to make cash payments each time and found it necessary to deliver personal property to make required payments.

6. The Petitioner asserted that the principal balance due was $8,766.14 and the arrears amount was calculated at $10,426.14 which included other costs.

7. The Petitioner asserts that since 1990, additional late charges and additional interest have brought the amount owing to $21,732.87.

8. Petitioner did not file its petition to repossess until January 25, 1995, five years after the contract was due, allowing the late charges and interest to buildup as it did.

9. Respondent did not receive any receipts for the delivery of her personal property although she testified she received receipts for her cash payments.

10. Respondent testified that she directed that the amounts credited for the personal property be applied to her mobile home payments.

11. While during the course of the contract period, Ms. Benally, Respondent, also took out a loan, she testified that the account was kept separate and the cash payments and property delivered did not apply to that loan which was completely paid back. This was not challenged by the Petitioner.

12. Ms. Benally testified that in 1990 she gave personal property which totaled $1,710.00, while petitioner showed credit in the amount of $1,345.00 to which Mr. Singleton was willing to apply a credit of $365.00.

13. Also, there was a discrepancy in the total late charges due. While the Petitioner's witness testified Ms. Benally owed $1,840.00 in late charges, she also testified that the figure was based upon a $15.00 per month late charge during the month she was late. However, the contract terms would limit the late charge to $14.78 per month. In addition, the late charges continued to accumulate after the contract year ended. Again, the Petitioner was willing to apply $22.06.

14. The contract terms read at 12 of the contract:

> 12. Delinquency and collection charge: Buyer hereby agrees to pay a delinquency and collection charge on each payment in default for a period of more than ten (10) days in the amount of 5% of each payment, or $15.00 which is less.

15. Ms. Benally also testified that she gave property for which she did not receive credit in the amount of $3,005.00. The property delivered was:

| One camcorder | $2,200.00 |
| Three shawls (pendelton) | $300.00 |
| Three concho belts | $150.00 |
| Three turquoise beads | $150.00 |
| Three chokers | $65.00 |
| One bead | $50.00 |

16. Ms. Benally also testified she paid a total of $1,007.55 since the end of the contract period.

## DISCUSSION

This being a repossession case, this Court is obligated to review records, testimony, and evidence submitted to this Court to determine whether Singleton Mobile Home should repossess the 1973 Presidential mobile home and whether the Respondent, Bernice Begay Benally, should be required to pay the amount requested by the Plaintiff.

While there is no dispute regarding Ms. Benally's failure to make payments on the contract, there is a dispute as to the amount owed. In particular, the Respondent asserted that the record keeping practices of the Petitioner have been inadequate and as grounds stated that on several occasions she was not credited for cash payment and delivery of personal property. The Respondent also testified that while she was given receipts for her cash payments, she was not given receipts for her personal property.

Respondent also testified she was not properly assessed for late charges and that the lesser amount of $14.78 should have been used in assessing her late charges, rather than the $15.00 amount she was assessed on several occasions.

While the records are difficult to decipher, due to Plaintiff's lack of accuracy and neatness of the records, this Court is able to ascertain by testimony and supporting documents what was owed on the contract as of the ending date of the contract. The Petitioner has also submitted documents on additional charges since January 25, 1990, which include late charges, interest and taxes.

Use of the Rules of Repossession is new to this Court. While these Rules were adopted by the Navajo Nation judges in 1982, all of the judicial districts have not implemented them. A few began to utilize the Rules when *Reservation Business Services v. Albert*, 7 Nav. R. 123 (1995), was issued by the Navajo Nation Supreme Court.

The history of consumer law on the Navajo Nation is brief. In 1968, the Navajo Tribal Council, in Resolution No. CF-26-68, declared the public policy that self-help repossession of secured personal property was illegal. This was codified as 7 N.T.C. Sections 607-609 (Supp. 1985) and requires creditors to either obtain consent from the debtor to repossess or to obtain an Order of Repossession by the Navajo Tribal Court.

Fearful of Federal Court challenges, the Navajo Nation judges adopted repossession rules to set out the procedure for repossession actions. In *Reservation Business*, the Supreme Court stated:

> The Navajo Nation judges wanted a middle ground between self-help repossession and the delays of normal civil proceedings. They wanted to assure that consumers would be protected from repossession on technical grounds, while offering a prompt and efficient remedy to creditors. The choice reflected in our repossesion rules is that there be a summary proceeding for creditors which allows due process protection for debtors. It modified the common law replevin action in a procedure which permrts a petition, an Order to Show Cause to the debtor, and a summary hearing to decide the property of repossession. The rules offer protection for purchasers of personal property on credit while assuring a healthy business climate.

*Id.* at 126.

Upon the issuance of *Reservation Business* in 1995, this Court has attempted to implement the Rules of Repossession approved by the judges in 1982.

It appears that the intent of the judges, when they approved the Rules, was to find a balance between protecting the purchasers and providing a prompt and efficient remedy to creditors. However, the Rules as applied here did neither when strictly applied.

In this case, there has been no dispute that the Respondent is behind in her payments. As of the day the contract ended, the Respondent was behind in her payments by $8,766.62.

Since then, Plaintiff has added late charges and interest alleging the amount owed was more.

The circumstances involved in this case, however, is that Respondent has been behind in her payment more often than not. Each time, the Plaintiff allowed her

to remain in arrears as demonstrated by the late charges, for which Respondent has paid or was assessed either $14.74 or $15.00. In addition, she was allowed to make payments by delivering personal property. Since the contract was entered, Respondent has delivered personal property for which the Petitioner has accepted as payment.

It has been about five years since the end of the contract period and Petitioner did not file its petition until 1995. The Petitioner has been assessing the Respondent late charges and taxes since 1990 and as result the Petitioner requests of this Court to enter a judgment for repossession and for the total amount requested in the amount of $19,613.38 up to January 25, 1995.

The Rules of Repossession would require repossession, where the right to repossess is clear unless the provision of the rule placing limitation on repossession will not be satisfied. Rule (4).

Where the right to repossess personal property is regulated by a contract, the Court is required to apply the terms of the contract unless they are unconscionable or contrary to law. Rule (4).

The Court is required only to consider whether or not the property is a security under an agreement and whether or not there has been a breach of the agreement so as to justify repossession. Furthermore, no counterclaim, setoff or other independent claims in ruling upon the question of repossession is to be considered by the Court. Rule (8)(b).

When read in light of Rule (9), the Court can set a hearing when the Respondent makes a claim against the Petitioner in the nature of a counterclaim, setoff or otherwise. This Court in applying the Rules has discretion to make a preliminary inquiry as to whether or not there is probable cause to believe the Respondent may have a valid claim for relief and should there appear to the Court that a valid claim exists, the Court has several options as set out in Rule (9)(b)(1), all of which take the property away from the Respondent pending proper Court action with the exception of Rule (9)(b)(3), which allows the Respondent to keep the property upon the posting of a bond equal to the value of the property or the balance due on it. The Court then can make its determination as to whether there is a claim.

When these sections are applied, here, there doesn't appear to be any protection of the purchaser, nor do these sections provide a prompt or efficient remedy for the creditor, particularly should the Respondent assert a claim. The difficulty in this case is that the records kept by both the seller and the buyer are less than adequate. Finally, the seller attempts to strictly apply the contract terms five (5) years after the payments have stopped. In reality, the contract had been breached time and time again, while the interest and late charges were adding up to a hefty figure.

In *A-1 Mobile Homes, Inc., v. Raymond and Alice Becenti*, 2 Nav. R. 72 (C.P. Dist. Ct. 1979), the Court was presented with an argument that where a creditor accepted late and erratic payments, there was a waiver of "time is of essence"

requirement. The Defendant in *A-1 Mobile Homes, Inc.*, by citing *Soltis v. Liles*, 551 P.2d 1297, 1300 (Ore. 1976), argued that where there was acceptance of late payments or erratic payments, there was a waiver to strictly apply the contract. In so doing, however, the Court did look to *Soltis* for the proposition that accepting late payments repeatedly may result in a waiver to declare a default in strict compliance with the contract. In *Soltis*, the contract contained a clause providing that any failure to make timely payment would be deemed a default. The *Soltis* court took the position that a vendor or creditor, who has repeatedly accepted late payments in the past cannot strictly apply the terms of the contract and cannot declare a default without first giving the debtor reasonable notice of his intention to insist upon strict compliance with the terms of the contract in the future. The terms of the *Soltis* contract provided that where there is failure to make payments within the grace period, the escrow agent is authorized to surrender to seller, upon demand and without notice to buyer, all of the documents specified in the preceding paragraph, thereby terminating the escrow. *Id.* at 1301. The Court also stated that the vendor or creditor must allow the debtor a reasonable opportunity to cure any past delinquencies. *Id.* at 1300. While, in Oregon, there is a state law to this effect, the Court did apply *Soltis*, by finding that there was sufficient notice to take action and that the history of payments indicated an intention on the part of the defendant to make monthly payments before the date that they became due.

In *A-1 Mobile Homes, Inc.*, the Court focused on whether new notice should be given upon each default. The Court stated:

> This behavior on the part of Defendant was not a separate default, but the continuation of his previous one which had not been cured because of the outstanding late charges. Therefore, further notice from GECC of its intention to take legal action was not necessary following the March, 1971, warning. *A-1 Mobile Homes.* 2 Nav. R. at 74.

There the Court accepted the argument that sufficient notice be given, and decided sufficient notice was given.

In its decision, the Court, while not addressing the specific issue of whether there was a waiver or estoppel so as to preclude strict enforcement of the contract, did respond to the waiver of default argument and in so doing, denied Defendant's request by finding that sufficient notice was given.

Here, the terms of the contract require that ninety-six (96) payments be made for the period covering February 25, 1982 to January 25, 1990. The payment amount of $295.62 was to have been made from February 25, 1982 to December, 1989 and $296.10 was to have been made in January 25, 1990, as a last payment.

Item 23 of the contract between the Respondent and the Petitioner requires that should the buyer default in any payments, the seller shall have the right to declare all amounts due immediately, and the buyer would be required to deliver the property to seller at a place designated by the seller and he would have the

right to repossess without demand. This did not happen until five (5) years later. Also in Item 24, the contract states that "time is of the essence of this contract."

In *Hale Contracting v. United New Mexico Bank*, 799 P.2d 581 (N.M. 1990), it states where "previous conduct of parties is in direct conflict with unequivocal express terms of an agreement, the latter is determinative as to the nature of their agreement." *Id.* at 587. Also in *Hale*, the Supreme Court of New Mexico addressed whether the bank was estopped from applying strictly the terms of the contract, which states that when payment is not made and the bank deems itself unsecured, the indebtedness "shall become and be due and payable forthwith without demand."

The New Mexico Supreme Court stated, "When a party accepts a late payment on a contract without comment, he waives the default that existed. With repetition his actions may suggest an intention to accept late payments generally." *Id.* at 588.

In *Hale*, the Court addressed the issues of waiver, modification and waiver by estoppel. Here, we are concerned with waiver by estoppel. Waiver by estoppel is applied where the party shows that she was misled to her prejudice by the conduct of the other party into the honest and reasonable belief that waiver was intended by the vendor. Waiver by estoppel is further explained as follows:

> Waiver of estoppel based upon either an actual waiver of certain "expenses or conduct" where the reliance of the opposite party and his change of position justifies the inhibiton to assert the obligation or condition." *Id.* at 586.

In *Hale*, the case *Cowan v. Chalamidas*, 98 N.M. 14, 644 P. 2d 528 (1982), was quoted as follows: "When a contract payee accepts late payments without objection as to their timeliness, he impliedly leads the payor to believe that late payments are acceptable." Furthermore:

> [A]s a practical matter, one party to a contract will use his past commercial dealing with another party as a basis for the interpretation of the other party's conduct. *Hale*, 799 P.2d. at 588.

Here, the buyer was led to believe she did not have to make timely payments, and she was further led to believe that when she did, she could only make partial payments, some in personal property. The Respondent was misled to her prejudice into an honest and reasonable belief that Singleton would not assert strictly the contract terms and that Singleton was unconcerned about the past due payments and that she would be allowed to continue making inconsistent and irregular payments.

## CONCLUSION

Based upon the above discussion, the doctrine of waiver by estoppel would prevent Singleton from fully enforcing the contract terms. First, Singleton waived its right to strictly enforce the contract terms regarding timely payments. That in itself is evident.

Secondly, Singelton is estopped by claiming any interest after the contract period expired and any late fees after the contract period expired.

This Court has issued a separate Order of Repossession. Any sale of the mobile home shall be in strict compliance with the Navajo Uniform Commercial Code. Any deficiency judgment shall be allowed only upon a showing of strict compliance with the Uniform Commercial Code.

The Court's findings are that the amount owed as of the end of the contract date was $8,766.62. After the contract date, Respondent paid $1,007.55. Also deducted was a $65.00 payment agreed to by the Petitioner, a $22.06 late charge for over-charge fee agreed to by the Petitioner, a $365.00 credit not previously credited and $3,005.00 for property given not previously credited. Thus, the amount owed by the Respondent without interest or late charge since January 25, 1990 is $5,309.39, which is the amount entered as judgment for the Petitioner.

Finally, this Court on November 29, 1995 imposed sanctions against the Petitioner in the amount of $400.00 to compensate Respondent's counsel. The Petitioner is hereby Ordered to pay $400.00 to Respondent's counsel within fifteen (15) days.