Argued and submitted December 18, 1987, reversed and remanded with instructions
on appeal and affirmed on cross-appeal March 9, 1988

BLADES,
*Appellant - Cross-Respondent,*

*v.*

WHITE MOTOR CREDIT CORPORATION,
nka VTCC, Inc.,
*Respondent - Cross-Appellant.*

(A8503-01649; CA A43412)

750 P2d 1198

Thomas J. Sullivan, Tigard, argued the cause and filed the briefs for appellant - cross-repondent.

James Ray Streinz, Portland, argued the cause for respondent - cross-appellant. With him on the brief was McEwen, Gisvold, Rankin & Stewart, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge,*and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

* Joseph, C. J., *vice* Young, J., deceased.

## VAN HOOMISSEN, J.

Plaintiff appeals from a judgment notwithstanding the verdict. He contends that there was evidence to support the jury verdict awarding him punitive damages. Defendant cross-appeals the denial of its motion for a directed verdict. We reverse on appeal and affirm on cross-appeal.

■ A trial court may not set aside a jury's verdict unless it can say affirmatively that there is no evidence from which the jury could have found facts necessary to support its verdict. On appeal, we consider the evidence, including inferences, in the light most favorable to plaintiff. *Brown v. J.C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984). In that light, there is evidence in the trial court record to establish these facts. In 1978, plaintiff, a truck driver, entered into a retail installment contract and security agreement with Columbia River White Trucks for the purchase of a diesel truck. The contract was assigned to defendant. During the next few years, plaintiff got behind in his payments on many occasions. Defendant accepted late payments, although it assessed penalties for them. In 1980, plaintiff was in an accident with the truck. Defendant wanted to consider the truck a total loss. Plaintiff however, insisted that the truck was repairable. Subsequently, plaintiff received an insurance check payable to both plaintiff and defendant for the value of the truck. Defendant refused to sign the check, because it disagreed with plaintiff's plan to repair the truck. Plaintiff refused to sign the check unless defendant did so. They finally agreed that plaintiff could pay defendant out of the insurance settlement to bring his account current and use the balance to repair the truck. In early 1981, the truck's engine overheated and the truck was towed to a shop in Bend, owned by Clark, where it was repaired. Less than a month later, the engine again needed repair, and plaintiff had the truck towed to Portland. He discovered that the new trouble was caused by wrong parts having been installed by the shop in Bend. Clark agreed in writing to repair the engine at his expense and towed it back to Bend on May 2, 1981. A few days later, plaintiff and Clark argued, because Clark had not done the repairs.

Plaintiff notified defendant on May 6, 1981, that the truck was back in the shop and that he would be late with the payment due that day. He told defendant that Clark was

responsible for the repair, because his shop had done the previous repair improperly. Defendant's regional collection manager, Thornton, testified that he had talked to someone in Clark's shop, who told him that Clark did not plan to repair the truck but intended to tow it to a field and to leave it there. Thornton said that his decision to repossess the truck was based on plaintiff's notice that he would be late with the payment and on the repair shop's plan to leave the truck in a field without repairing it. Defendant repossessed the truck on May 15, 1981. At that time, plaintiff had paid 30 of 36 installments, and the 31st was nine days late.

Plaintiff brought this action, seeking compensatory and punitive damages for defendant's alleged conversion of the truck. As an affirmative defense, defendant asserted that the retail installment contract allowed it to repossess the truck if defendant "in good faith believes its prospect of payment or performance by the [plaintiff] is impaired."[1] Defendant moved for a directed verdict on the grounds that "the basis for the repossession * * * was because of insecurity and that the plaintiff has not shown a lack of good faith * * * by White Motor Credit Corporation at the time they [sic] made the repossession." The trial court denied the motion for directed verdict.[2] The jury returned a verdict for plaintiff awarding $18,239 in compensatory damages and $18,000 in punitive damages.

■      A conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Restatement (2d) Torts,* § 222 A(1), *(quoted in Mustola v. Toddy,* 253 Or 658, 663, 456 P2d 1004 (1969)); *Leibrecht v. Hawkins,* 83 Or App 396, 399, 731 P2d 1057 (1987). It was uncontested at trial that defendant exercised dominion or control over the truck by repossessing it. Defendant argues that it did not interfere with any right of plaintiff. It asserts that it was justified in feeling insecure, because plaintiff had said that he would be late with the next payment. He also had said that Clark was

---

[1] Defendant did not allege that the contract was in default.

[2] We review the cross-appeal first, because, if defendant prevails on the cross-appeal, we would not reach the issue raised by the appeal.

responsible for repairing the truck and that Clark would not repair it but would have it towed away. Defendant argues that its collateral was in jeopardy and that it had the right to act to protect its collateral.

Reasonable jurors could draw different conclusions from the evidence. Thornton testified that plaintiff had indicated to defendant that he could not make payments until the truck was repaired. Plaintiff testified that he said only that he would not make the current payment on time. Thornton testified that plaintiff did not tell defendant that Clark had agreed in writing to repair the truck. Plaintiff testified that he had told defendant that Clark had done so. He also testified that, if Clark did not repair the truck, he would have taken the truck to another repair shop and billed Clark. Thornton testified that someone in Clark's repair shop had indicated to him that Clark intended to have the truck towed to an empty lot and left there. However, he admitted on cross-examination that there was no notation in defendant's files of that telephone conversation. Further, Thornton conceded that defendant did not contact plaintiff concerning Clark's plans for the truck or concerning defendant's decision to repossess the truck.

In the light of the evidence, including plaintiff's insistence on repairing the truck after the previous accident, the jury could have found that plaintiff would have had the truck repaired and would have made his payments and that defendant knew he would have done so. If it had, the jury would have found that neither the prospect of performance nor the collateral was impaired. It further could have found that defendant did not in good faith[3] believe that it was justified in repossessing the truck. Therefore, the court did not err in refusing to grant the motion for directed verdict.

Plaintiff contends that the trial court erred in granting judgment n.o.v. after the jury returned a verdict awarding punitive damages. Punitive damages are appropriate to deter a "wilfull, wanton or malicious wrongdoer." *Friendship Auto v. Bank of Willamette Valley*, 300 Or 522, 532, 716 P2d 715

---

[3] Good faith in an installment contract means "honesty in fact." ORS 71.2010(19); *see also Salsbery v. Ford Motor Credit Co.*, 54 Or App 522, 528, 635 P2d 669 (1981), *rev den* 292 Or 356 (1982).

(1986). Malice is the intentional doing of a wrongful act, without just cause or excuse and with intentional disregard of the social consequences. *Friendship Auto v. Bank of Willamette Valley, supra,* 300 Or at 535; *McElwain v. Georgia-Pacific,* 245 Or 247, 249, 421 P2d 957 (1966); *Andor v. United Air Lines,* 303 Or 505, 513, 739 P2d 18 (1987). The trial court's order, by letter, explained its judgment n.o.v.:

> "Defendant's employees probably should not have ordered the repossession of plaintiff's truck. It was apparent, however, they acted out of confusion and misunderstanding—not out of malice or desire to cause plaintiff harm."

In reviewing similar reasoning, the Supreme Court stated:

> "The trouble with the trial court's * * * analysis is that the jury as reasonable people may have drawn different inferences from the evidence." *Friendship Auto v. Bank of Willamette Valley, supra,* 300 Or at 536.

There is evidence in this case from which the jury could infer that defendant had intentionally converted plaintiff's truck without a good faith belief that it had any justification or excuse. Further, the jury could have considered the failure of defendant to notify plaintiff that the truck would be repossessed so that he could take steps to avoid the repossession as indications of defendant's disregard of the consequences of its action. The trial court erred in granting judgment n.o.v.

Reversed and remanded on appeal with instructions to reinstate the jury verdict and to enter judgment thereon; affirmed on cross-appeal.