Argued and submitted February 27, reversed and remanded with instructions;
otherwise affirmed May 3, 1989

**JOHNS,**
*Appellant,*

*v.*

**PARK et al,**
*Respondents.*

**(A8609-05550; CA A47522)**

773 P2d 1328

Mark Bennett Weintraub, Portland, argued the cause and filed the brief for appellant.

Henry J. McCurdy, Portland, argued the cause for respondents. With him on the brief were Dobbins & McCurdy and William Parker, Portland.

Before Graber, Presiding Judge, Joseph, Chief Judge, and Edmonds, Judge.

GRABER, P. J.

### GRABER, P. J.

This case arises from plaintiff's sale of a grocery business to defendants. The jury found that defendants had breached the contract of sale but that plaintiff had suffered no damage as a result. It also found for defendants on their counterclaim for conversion of inventory, awarding them compensatory damages of $27,103 and punitive damages of $5,000.[1] The trial court entered a judgment that incorporated the verdict and awarded attorney fees to defendants. Plaintiff appeals. He raises these issues, among others:[2] (1) whether he is entitled as a matter of law to $36,000 in damages for breach of contract; (2) whether there was any evidence to support the verdict for defendants on their counterclaim for conversion; (3) whether there was any evidence to support the award of punitive damages; and (4) whether the trial court improperly awarded attorney fees and costs to defendants and refused to award them to plaintiff. We affirm in part and reverse in part.

We state the facts related to the contract claim in the light most favorable to plaintiff, because the jury found that defendants had breached the contract. *Jacobs v. Tidewater Barge Lines,* 277 Or 809, 562 P2d 545 (1977). On the other hand, and for the same reason, we state the facts related to defendants' counterclaim for conversion in the light most favorable to them.

On July 3, 1986, the parties entered into three agreements—a contract of sale, a security agreement, and a lease —involving the Penny Saver Market and Delicatessen. Under the contract, plaintiff sold the "business assets," "consisting of [the] tradename, goodwill, trade fixtures, furniture, machinery and equipment," for $160,000, on which defendants made a $40,000 down payment. They were to make monthly payments of $1,500 on the contract balance. The contract provided separately for the sale of the inventory for cash. A lease of the premises, which plaintiff would still own, called for monthly payments of $1,400. Both the contract and lease payments were due on the third of each month.

---

[1] The jury also found that defendants had breached their lease, for which it awarded plaintiff $700, and found for plaintiff on defendants' counterclaims for fraud and misrepresentation. No issues on appeal relate to those claims.

[2] Plaintiff's remaining assignments of error are without merit and require no discussion.

According to defendants, the purchase price had been arrived at, in part, on the basis of projected daily sales of $1,600 to $2,000. On July 22, 1986, they wrote to plaintiff to express frustration over daily sales that had averaged $1,200 and to ask for a modification of the sales contract and the lease to reflect the difference between actual daily sales and their expectation.[3] Plaintiff responded through his attorney, who emphasized the terms of the contract and warned that failure to comply would result in enforcement of the contract "as provided by law."

Defendants made their August payments late. On August 12, they wrote another letter to plaintiff, again complaining of low average daily sales and asking for an adjustment of the sales price and lease payments. Defendants failed to make the September 3, 1986, payments. On September 5, plaintiff's attorney advised them that, if they failed to pay within 24 hours, he would take legal action under the Uniform Commercial Code and the contract.

Defendants still did not make the payments. They testified, however, that they had tried to contact plaintiff on September 15, 1986, to discuss the late payment problem but were told that he would not be available until the next day. Also on September 15, plaintiff obtained a court order for provisional process in the form of claim and delivery. As receiver, he took control of "all lease-hold [sic] improvements, inventory, furniture, machinery, equipment, trade fixtures and other property" of the business.[4] On the same day, he filed this action. On March 6, 1987, he purchased the business for $90,000 at a public auction.

■ Plaintiff first argues that he is entitled to $36,000 in damages as a matter of law. The jury found:

"What are plaintiff's damages resulting from defendants' breach of the contract of sale?

"$  -0-  May not exceed $36,000."

The record contains evidence from which the jury reasonably

---

[3] Defendants proposed to reduce the purchase price to $120,000 and monthly payments on the contract and lease to $1,200 each.

[4] The original order was continued several times and was amended. Those amendments do not affect our analysis.

could have found that plaintiff suffered no damage. For example, there was evidence that plaintiff continued to value the business at $160,000 when he bought it back and that he retained the $40,000 down payment. Therefore, plaintiff was not entitled as a matter of law to the damages that he sought.

Next, plaintiff asserts that there was no evidence from which the jury reasonably could have found that he converted the inventory. Defendants' theory was that the inventory was not part of the collateral securing the contract of sale and that, therefore, plaintiff converted the inventory when he claimed a security interest in it, obtained provisional process, and took possession of it on September 15. Plaintiff argues that the documents unambiguously included the inventory as part of the collateral. We agree with defendants that the documents are capable of more than one reasonable interpretation, so that their meaning was a question for the jury. *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985).

The contract of sale provided, in part:

"1. *Sale of Business Assets.* Seller agrees to sell and Purchasers agree to purchase from Seller the entity doing business as 'Penny Saver Market and Delicatessen', the same consisting of said tradename, good will, trade fixtures, furniture, machinery and equipment, more particularly described on Exhibit A attached hereto and incorporated by reference as if set forth in words and figures.

"2. *Purchase Price.* The entire price of the purchase and sale of the trade fixtures, machinery, equipment, furniture, tradename and good will is $160,000.

"* * * * *

"4. *Inventory.* Seller's inventory shall be itemized, valued at retail less 28% as of the date of closing, and be paid for in cash by Purchasers to Seller on the closing date, said payment to be in addition to the payments mentioned above.

"* * * * *

"6. *Security.* To secure the payment of the purchase price above described, Purchasers will, at the closing hereunder make and enter into a security agreement and related UCC financing statements with Seller, the same to be respectfully [sic] substantially identical in form and substance

to Exhibit [*sic*] B and C attached hereto and incorporated herein by this reference."

The security agreement (Exhibit B to the contract) described the collateral this way:

*"CREATION OF SECURITY INTEREST*

"For valuable consideration, the receipt of which is hereby acknowledged, Debtor hereby grants unto Johns a security interest in the (leasehold improvements,) furniture, machinery, equipment and trade fixtures and all replacements thereof, hereinafter called 'the Collateral,' more particularly described in Exhibit A attached hereto and by this reference incorporated herein, all of which is located at 2606 S.E. Gladstone, Portland, Oregon."

Neither Exhibit A to the contract nor Exhibit A to the security agreement included the inventory. The ambiguity arises from Exhibit C to the contract, the UCC Financing Statement, which describes the collateral:

"Any and all leasehold improvements, *inventory,* furniture, machinery, equipment, trade fixtures listed on the attached Exhibit A, the good will tradename, *and all after acquired inventory,* furniture, machinery, equipment and trade fixtures and all replacements thereof located at 2606 S.E. Gladstone, Portland, Oregon." (Emphasis supplied.)

Plaintiff contends, among other things, that the jury was not entitled to find that the parties' intent was to exclude inventory from the collateral, because plaintiff testified about his understanding of the documents in that regard but defendants did not. However, the documents themselves created the ambiguity. The jury was entitled to adopt one of the two reasonable readings of them. There was evidence to support the verdict on the counterclaim for conversion.

Even if the jury could find for defendants on their counterclaim for conversion, plaintiff argues, they could not recover punitive damages under the circumstances of this case. Not every conversion entitles the plaintiff to punitive damages; malice, improper motive, or wilful or wanton disregard for the plaintiff's rights also must be shown. *Friendship Auto v. Bank of Willamette Valley,* 300 Or 522, 532-33, 716 P2d 715 (1986). Defendants were entitled to jury consideration of their claim for punitive damages, unless there was no evidence to support a finding of malicious or wanton conduct. *Blades v.*

*White Motor Credit Corp.*, 90 Or App 125, 129-30, 750 P2d 1198 (1988).

We agree with plaintiff, because he acted "under a good faith * * * belief that he [was] legally entitled to proceed * * *." *Lee v. Wood Products Credit Union*, 275 Or 445, 449, 551 P2d 446 (1976). Defendants point to evidence that they were recent immigrants and that plaintiff rebuffed their attempts to talk with him on and before September 15,[5] but they rely primarily on the parties' alleged intent that the collateral exclude the inventory. Because the documents demonstrate that intention, defendants argue, "[t]he jury could have concluded that the plaintiff lied to the court [that granted provisional process] when he stated * * * that he had a security interest in the inventory." What defendants do not take into account is that plaintiff presented the same documents to the provisional process court—including the UCC Financing Statement, which on its face covers the inventory as "collateral [under] ORS 79.4020"—that were before the jury here.[6] The provisional process court made an independent evaluation of the documents and found that plaintiff had a security interest in the inventory.

■ Although the jury was entitled to find the opposite, it was not entitled to find that "plaintiff lied" merely because a different factfinder had a different view of the same ambiguity. It is undisputed that plaintiff acted in accordance with the orders of the provisional process court. Defendants do not argue, and the record would not support a finding, that plaintiff withheld any pertinent documents from the provisional process court or followed an improper procedure to regain possession of the inventory.[7] Under those circumstances, plaintiff was legally entitled to proceed as he did, and no reasonable jury could have found malicious or wanton conduct. Defendants' claim for punitive damages should not have been submitted to the jury.

---

[5] Neither of those facts detracts from plaintiff's legal entitlement to obtain and act upon provisional process.

[6] The record concerning provisional process was introduced in the trial of the underlying claims.

[7] Moreover, the jury found that plaintiff was *not* liable for fraud or misrepresentation. *See* n 1, *supra*.

■ Finally, plaintiff argues that defendants are not entitled to an award of attorney fees or costs but that he is. Generally, a party cannot recover fees from an opponent unless a contract or statute confers that right. *Shipler v. Van Raden,* 288 Or 735, 747, 608 P2d 1162 (1980). Defendants are not entitled to attorney fees under the contract, because plaintiff prevailed on that claim. The jury found that defendants had breached the contract, even though it also found that plaintiff had suffered no damage as a result. We have discovered no basis apart from the contract on which to affirm an award of fees to defendants.[8]

■ Although plaintiff prevailed on the contract claim, he was not the prevailing party overall. As a general rule, there can be only one prevailing party in an action. Because the contract does not provide differently, the "prevailing party" here is the one in whose favor final judgment is rendered. ORS 20.096(5); *Zidell v. Greenway Landing Devel. Co.,* 89 Or App 525, 528, 749 P2d 1210 (1988).

> "If a plaintiff succeeds on a claim and the defendant also succeeds on a counterclaim, the prevailing party is the one who receives the net award, because it is that party 'in whose favor final judgment or decree is rendered.'" *Pelett v. Welch,* 71 Or App 761, 763, 694 P2d 574 (1985).

The net award is in defendants' favor. That being so, costs were properly awarded to defendants, and plaintiff is not entitled to recover his attorney fees or costs.

Reversed and remanded with instructions to delete portions of judgment awarding punitive damages and attorney fees; otherwise affirmed.

---

[8] Defendants argue that their net verdict entitles them to fees, because they "were affirming the contract and seeking the benefits of what they bargained for under it: reimbursement for the paid-for inventory." We disagree. Even though the contract was in evidence in the trial of defendants' counterclaim for conversion, that counterclaim sounded in tort, not in contract.