Argued and submitted June 12, resubmitted In Banc November 8, affirmed
December 13, 1989, reconsideration denied February 9, petition for review denied
March 6, 1990 (309 Or 441)

# AUERNHEIMER,
*Appellant,*

*v.*

# METZEN et ux,
*Respondents.*

## (87-CV-0188-JC; CA A49419)

783 P2d 1027

Thomas V. Bryant, Jr., Bend, argued the cause and filed the briefs for appellant.

John A. Berge, Bend, argued the cause for respondents. With him on the brief were Gregory P. Lynch and Gray, Fancher, Holmes & Hurley, Bend.

RIGGS, J.

Edmonds, J., dissenting.

**RIGGS, J.**

Plaintiff appeals from a judgment denying him strict foreclosure of a land sale contract. The trial court held that plaintiff had waived his right to foreclose by accepting installment payments after he knew that defendants were delinquent in their obligation to pay property taxes. On *de novo* review, we affirm.

In April, 1985, plaintiff sold a parcel of real property to defendants by a land sale contract. The contract included a "time of the essence" clause and provided that defendants would pay "all taxes * * * promptly before the same or any part thereof became past due * * *." In February, 1987, plaintiff became aware that defendants had posted a "for sale" sign on the property. He checked the county tax record and learned that defendants' property tax obligation was delinquent. Plaintiff did not declare defendants in default or notify them that he was aware of the delinquency. He continued to accept installment payments in March, April and May. Later in May, when he learned that defendants were planning to move, he filed this action, accelerating the outstanding balance and seeking strict foreclosure of the contract because of the tax delinquency.

Plaintiff was entitled to foreclose immediately when he discovered the default in the payment of taxes, but elected not to do so. The issue is whether he waived the right to exercise the time-of-the-essence provision by accepting three payments without notifying defendants of the default.

In *Staats v. Praegitzer,* 67 Or App 543, 679 P2d 334, *rev den* 297 Or 339 (1984), we held that the plaintiff had waived her right to strict foreclosure by accepting the benefit of the defendants' timely installment payments after declaring the defendants in default for failing to pay taxes. Although plaintiff here did not declare defendants in default before accepting the installment payments, that fact makes no difference in the waiver analysis, because the defendant in *Staats* never received the default notice. *Staats* controls here.

We hold that plaintiff waived the time-of-the-essence provision by continuing to accept the installment payments without providing notice of the default. To reinstate that provision, plaintiff was required to provide defendants notice

of the default, to allow them a reasonable opportunity to cure it and to advise them that timely performance would thereafter be required.

Affirmed.

**EDMONDS, J.,** dissenting.

On *de novo* review, the majority holds that plaintiff "waived" his right to exercise the time-essence provision of his contract by continuing to accept installment payments without providing notice of default. "Waiver" occurs when one intentionally relinquishes a known right. *Waterway Terminals v. P.S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965). The law will imply a waiver if, despite a breach of contract, a party by his conduct treats the contract as still in force and does not object to the breach. *Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 547, 373 P2d 661 (1962).

Plaintiff, at the time of trial, was a 78-year old, sight-impaired[1] man, who, in February, 1987, became aware of a "For Sale" sign posted on the property that he had sold to defendants in 1985. He went to the tax collector's office and was informed that the taxes were in arrears, beginning and following 1985. He postponed taking any action until May.[2]

---

[1] Plaintiff testified he was legally blind, could not read print less than two inches high and was able to read only the large letters in the contract that he signed. He had another individual read the tax records to him.

[2] Plaintiff testified why it did not upset him when he first discovered the taxes were unpaid, as follows:

"Q  * * * Did that upset you?

"A  Right at the moment it did not.

"Q  Why?

"A  Because I figured the people were going to pay them. They were going to live there and make that their home. I trusted them.

"* * * * *

"Q  Now what changed your mind on that?

"A  My mind changed when I seen [*sic*] they were going to move out.

"Q  And what did you do then?

"A  I went and filed suit.

"* * * * *

"Q  Why did you file suit then and not earlier?

"A  I assumed they were going to live there and pay their taxes and make that their home."

During that time, defendants were unaware that plaintiff knew that the taxes were delinquent. They believed, incorrectly, that the taxes did not become past due until after they were delinquent for three years. They made, and plaintiff accepted,[3] the installment payments for March, April and May, as required by a separate covenant of the parties' contract. On May 24, 1987, a realtor, acting on behalf of defendants, contacted plaintiff and informed him that defendants intended to sell the property and pay the delinquent taxes when the sale closed. Plaintiff again checked the status of the taxes with the tax collector. He learned they were still delinquent and immediately filed a claim for foreclosure. He did not accept further installment payments.

In *Benj. Franklin Federal Savings v. Parker,* 87 Or App 64, 741 P2d 512 (1987), the defendant mortgagors sold the subject property in August. The plaintiff mortgagee learned in September that the property might have been sold and confirmed that fact in November. It then notified the defendants that it was accelerating the unpaid balance of its note because they had not first obtained its consent for the sale. Thereafter, it accepted a payment in December. At trial, the defendants argued that the plaintiff had waived its right to accelerate by accepting the December payment. We said:

> "Defendants might be correct, *if* the provision which they breached had been that requiring timely payment and *if* plaintiff, after reinstating the time of the essence clause, had accepted another late payment. *See, e.g. Smith v. Piluso,* 79 Or App 238, 719 P2d 33 (1986); *Salishan Hills, Inc. v. Krieger,* 62 Or App 84, 660 P2d 160, *rev den* 295 Or 259 (1983). In those circumstances plaintiff would have acted inconsistently with its asserted right. Here, however, defendants' breach was not in failing to pay, and it was not something which they could cure by payment. The sale had occurred, and plaintiff had accelerated the balance. When plaintiff accepted the December payment, the period for defendants to pay the full amount and thereby avoid foreclosure had not expired. Plaintiff's acceptance of the December payment was thus not inconsistent with enforcing its right to accelerate the loan

---

[3] Plaintiff's daughter made out the receipts and kept the records of payment for plaintiff.

balance because of the sale and was not a waiver of that right."
87 Or App at 67-68. (Emphasis in the original.)

In *Staats v. Praegitzer,* 67 Or App 543, 679 P2d 334, *rev den* 297 Or 339 (1984), the contract contained a time-essence clause that required the defendant purchaser to pay the real property taxes when due. He did not pay the taxes for two years. The plaintiff mailed notice of that delinquency to the defendant, but the defendant never received it. Thereafter, the plaintiff accepted 10 monthly installment payments. We held that the plaintiff's actions of declaring a default, together with her subsequent acceptance of the installment payments, constituted a waiver of her right to strict foreclosure without giving the defendant further notice of default.[4]

When read together, those cases stand for the proposition that waiver occurs when the seller or mortgagee accepts benefits from the contract or mortgage that are *inconsistent* with the right to object to non-performance. In *Staats,* the plaintiff's actions were inconsistent with the right to accelerate the contract, because she had accepted payments after declaring the contract in default. In *Benj. Franklin,* the plaintiff's acceptance of a payment was not inconsistent with its right to object to the defendants' non-performance of their covenant to obtain consent for a sale. Likewise, this plaintiff's acceptance of three installment payments could not cure the defendants' breach of the obligation to pay taxes, and was not inconsistent with enforcement of his right to require timely payment of taxes. Waiver, whether express or implied by conduct, requires proof of an intent to relinquish a known right. On two occasions, the plaintiff checked on the status of the taxes. After the first occasion, he waited three months. The defendants were unaware that he knew about their delinquency. After the second occasion, he filed this action. The

---

[4] In discussing the holding in *Staats,* the majority states:

"Although plaintiff here did not declare defendants in default before accepting the installment payments, that fact makes no difference in the waiver analysis, because the defendant in *Staats* never received the default notice."

I disagree. If a contract vendor declares a default and subsequently accepts performance in a manner evidencing an intent to treat the contract as reinstated, those facts are persuasive evidence of waiver. Whether the vendee received notice of the default is not as probative as the actions of the vendor because an analysis of waiver examines the latter's intent.

circumstances do not persuade me that defendants proved a "waiver."

Joseph, C. J., and Richardson, J., join in this dissenting opinion.