Argued and submitted May 12, affirmed September 10, 1997

Jinny SHIRLEY,
Lawana Warnke and Bobbie Wade,
*Respondents,*

*v.*

Ray TOLBERT,
*Appellant.*

Ray TOLBERT,
*Appellant,*

*v.*

Jinny SHIRLEY,
Lawana Warnke, and Bobbie Wade,
*Respondents.*

(9404560CV; CA A94869)

945 P2d 567

David V. Gilstrap argued the cause for appellant. With him on the briefs was Davis, Gilstrap, Harris, Hearn & Welty, P.C.

Michael L. Spencer argued the cause and filed the brief for respondents.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals a judgment that foreclosed a trust deed on real property based on a tax delinquency of $5.19.[1] Defendant argues that foreclosure was erroneous because plaintiffs waived any entitlement to timely payment of property taxes by accepting late installment payments after discovering the tax deficiency. In all events, defendant asserts that foreclosure is inequitable on these facts. On *de novo* review, ORS 19.125, we affirm.

On May 11, 1992, defendant agreed to purchase 79 acres of vacant land in Klamath County from plaintiffs for $35,000. Defendant paid $7,183.92 as a down payment. Thereafter, defendant executed a promissory note, and secured the note with a trust deed, for $28,000. The deed required defendant to make payments of $354 on the 21st day of every month beginning in August 1992, until the balance was paid. The deed also required defendant either (1) to pay property taxes directly and provide plaintiffs with a receipt evincing that payment, or (2) to pay plaintiffs sufficient funds to cover the property tax assessed, before the taxes became "past due or delinquent." The trust deed included a "time is of the essence" provision:

> "Upon default by grantor in payment of any indebtedness secured hereby or in his performance of any agreement hereunder, time being of the essence with respect to such payment and/or performance, the beneficiary may declare all sums secured hereby immediately due and payable. In such an event the beneficiary at his election may proceed to foreclose this trust deed in equity as a mortgage or direct the trustee to foreclose this trust deed by advertisement and sale, or may direct the trustee to pursue any other right or remedy, either at law or in equity, which the beneficiary may have."

The parties also executed a collection escrow agreement, which specified that the escrow agent was to collect the

---

[1] $5.19 is the original amount of the tax deficiency, but interest has accumulated since it became delinquent. By the time of trial, the additional interest brought the deficiency to over $7.

installment payments and hold the deed and note until the note was fully paid.

Although defendant paid the first two installment payments on time, defendant thereafter made, and plaintiffs accepted, twenty-one consecutive late payments. Further, defendant failed to timely pay the 1993-94 property taxes by the due date, November 15, 1993. On December 27, defendant paid $167.96 toward the taxes then overdue, leaving a $5.19 balance.[2] Defendant did not present plaintiffs with a receipt showing the tax payment, as required by the trust deed. The taxes still owing became "delinquent" on May 15, 1994. However, plaintiffs continued to accept installment payments.

On November 4, 1994, plaintiffs filed this action. There is no evidence that plaintiffs knew of the tax deficiency before that time. In their complaint, plaintiffs asserted an entitlement to accelerate the balance due on the deed and sought foreclosure on two bases: (1) the tax deficiency of $5.19; and (2) defendant's failure to make three installment payments, which remained outstanding.

On December 19, 1994, after plaintiffs filed this action, but before defendant was served or otherwise knew of it, defendant made three installment payments to the collection escrow, totaling $1,065. Plaintiffs, via the escrow agent, accepted those payments, and then, on December 23, closed the collection escrow account. Including those three installment payments, defendant had made payments totaling $16,753.30, including $9,569.38 towards the $28,000 principal. Defendant was finally served, and learned of the action, on February 7, 1995.

In his answer, defendant asserted that plaintiffs, by their repeated acceptance of late installment payments, had waived enforcement of the "time is of the essence" provision as to both the tax deficiency and the late installment payments. Defendant also counterclaimed for rescission of the

---

[2] Defendant could have taken advantage of a 3% reduction from the $173.44 property tax if he had paid by November 15, 1993. If he had paid by that date, he would have owed only $167.96, which is the exact amount he paid to the Klamath County Tax Collector on December 27, 1993.

sale transaction based on plaintiffs' alleged wrongful termination of the collection escrow account.

The case was tried on stipulated facts in April 1996. The trial court concluded that plaintiffs, through their consistent acceptance of late payments, had waived the "time is of the essence" clause with respect to the three late installment payments.[3] However, the court further determined that defendant's nonpayment of taxes—*i.e.*, the $5.19 deficiency—presented an "independent basis upon which Plaintiffs may seek foreclosure," and, consequently, ordered strict foreclosure. The trial court rendered judgment for plaintiffs and, subsequently, entered judgment against defendant's rescission counterclaim.[4]

■ Defendant raises three assignments of error. In his first assignment, defendant argues that the trial court erred in granting a judgment foreclosing the trust deed. He asserts that plaintiffs waived their right to foreclose on the basis of the tax deficiency because they accepted late installment payments after they knew or should have known that the taxes were delinquent. Plaintiffs respond that acceptance of late installment payments does not automatically waive the separate contractual right to have defendant pay property taxes before they become delinquent. In particular, plaintiffs assert, the obligation to timely pay taxes operates independently of the obligation to timely pay monthly installment payments and thus, waiver of the "time is of the essence" clause as to the latter does not effect a waiver as to the former. Plaintiffs argue, moreover, that they did not know of the delinquency until immediately before they filed suit and that knowledge of the delinquency is required before acceptance of payments can effect a waiver. Finally, plaintiffs argue, their acceptance of late payments *after* they filed suit was not inconsistent with acceleration of the amount due, and, thus, did not effect a waiver.

---

[3] Plaintiffs do not cross-assign error to that ruling.

[4] The court's original judgment, from which defendant appeals, did not adjudicate defendant's rescission counterclaim. However, upon leave of this court, ORS 19.033(4), the trial court subsequently entered an amended judgment disposing of the counterclaim.

Generally, when a contract contains a "time is of the essence" clause, "the fact that defendants were one day late would be sufficient to place them in default under such a contract." *Soltis v. Liles*, 275 Or 537, 542, 551 P2d 1297 (1976). However, repeated acceptance of late payments under the contract will operate as a waiver of a contractual requirement of timely payment. *Id*. In such a case,

> "it is clear that a vendor or creditor who has repeatedly accepted late payments in the past cannot declare a default without first giving the debtor reasonable notice of his intention to insist upon strict compliance with the terms of the contract in the future. The vendor or creditor must also allow the debtor a reasonable opportunity to cure any past delinquencies." *Id*.

Defendant relies upon *Staats v. Praegitzer*, 67 Or App 543, 679 P2d 334, *rev den* 297 Or 339 (1984), and *Auernheimer v. Metzen*, 99 Or App 642, 783 P2d 1027 (1989), *rev den* 309 Or 441 (1990), to support his position that plaintiffs' acceptance of late installment payments waived enforcement of the "time is of the essence" provision here. In *Staats*, this court held that the plaintiff waived her right to strict foreclosure because she accepted late installment payments after she knew that the defendant was delinquent in paying property taxes. 67 Or App at 545. In *Auernheimer*, we held that the plaintiff waived the right to foreclose due to a tax delinquency because, even after the plaintiff discovered the tax delinquency, the plaintiff continued to accept regular installment payments without reinstating the "time is of the essence" clause. 99 Or App at 644. Defendant argues, based upon *Staats* and *Auernheimer*, that once plaintiffs waived the "time is of the essence" clause, he was entitled to notice of reinstatement of it and a reasonable time to cure all deficiencies, including the tax deficiency.

Defendant's waiver argument, though initially appealing, fails. *See Alderman v. Davidson*, 146 Or App 282, 933 P2d 365, *rev allowed* 325 Or 367 (1997). In *Alderman*, the plaintiff, through a pattern of accepting late installment payments on a trust deed, waived the "time is of the essence" clause as to the installment payments. *Id*. at 286. The plaintiff subsequently discovered that the defendant had failed to timely pay taxes on the property as required by the trust

deed. Before the plaintiff filed suit, however, the defendant sent overdue installment payments to the plaintiff, which would have brought the account up to date. The plaintiff did not negotiate the checks but, rather, sent them to her attorney. The plaintiff filed suit for foreclosure based upon the tax delinquency and formally accelerated the balance due. The plaintiff's attorney then returned the checks to the plaintiff, and she cashed them. The defendant argued that (1) the plaintiff, by consistently accepting late payments, waived the "time is of the essence" clause with respect to the obligation to timely pay taxes; and (2) the plaintiff, by accepting the late payments (negotiating the checks) after the suit was filed, waived the right to foreclose on the ground of the tax deficiency.

We held that waiver as to the installment payments did not, in that circumstance, also constitute a waiver of the "time is of the essence" clause as to the taxes. After analyzing the language of the trust deed, we held that the deed treated the obligation to pay taxes as an obligation independent from the obligation to pay installment payments, and that the "time is of the essence" clause applied to each obligation separately:

> "In order for a default in making timely payments to be a waiver of a default on another obligation, the plaintiff must accept the late payments with knowledge of the other default and before filing a lawsuit to accelerate the balance and foreclose the trust deed. Because plaintiff did not do so here, she is entitled to treat time as being of the essence of defendant's obligation to pay the taxes." 146 Or App at 286.

We distinguished *Staats* and *Auernheimer*, because, in those cases, the plaintiffs accepted installment payments with knowledge of the tax deficiencies and *before* filing suit. That conduct, which treated the contracts as continuing in effect even after discovering the defaults, was inconsistent with acceleration and, thus, effected a waiver.

Conversely, in *Alderman*, the plaintiff's acceptance and negotiation of installment payments *after* the action for foreclosure was filed and after the balance was formally accelerated did not constitute waiver of the right to foreclose. The plaintiff's subsequent acceptance of such payments was

not inconsistent with acceleration and did not treat the payment provisions of the contract as having continuing effect. Rather, "[t]hey can be explained as accepting partial payments on the accelerated balance that she sought in the lawsuit." 146 Or App at 290.

Here, as in *Alderman*, there is no evidence that plaintiffs accepted late installment payments *after discovering the tax delinquency and before filing suit.* Rather, although plaintiffs accepted late payments after learning of the tax deficiency, they did so only *after* filing suit. Nor is *Alderman* distinguishable on the basis of any material difference in the language of the trust deeds. The deed in *Alderman* and the deed here both required the buyers to pay the taxes before they became past due or delinquent, and both contained identical "time is of the essence" language. *See* 149 Or App at 719. *See also Alderman*, 146 Or App at 287 (quoting identical language from the trust deed at issue there). Thus, here, as in *Alderman*, (1) the language of the trust deed made the obligation to pay taxes timely independent from the obligation to make timely installment payments; (2) plaintiffs did not know of defendant's default on taxes before accepting late payments prior to filing suit; and (3) plaintiffs accepted late payments, knowing of the default, only after filing suit.[5] Consequently, plaintiffs' acceptance of late installment payments did not waive their right to foreclose on the basis of the tax delinquency.

Defendant contends, alternatively, that, regardless of whether plaintiffs had actual notice, they had constructive notice of the tax deficiency when they accepted the late installment payments between May 15, 1994, and November 4, 1994, and, thus, waived their right to foreclose on the basis of the delinquent taxes. That constructive notice, defendant asserts, was based on plaintiffs' contractual entitlement to a receipt showing tax payments made. The trust deed provides:

"[G]rantor agrees:

---

[5] Defendant places some emphasis upon when he received service. However, for the purposes of waiver, *defendant's* knowledge of the alleged default is not the relevant issue. Rather, as emphasized in *Alderman*, the material, indeed determinative, consideration is *plaintiffs'* knowledge relative to the acceptance of payments and the filing of the suit. *Alderman*, 146 Or App at 289-90.

"\* \* \* \* \*

"5.   \* \* \* to pay all taxes, assessments and other charges that may be levied or assessed upon or against said property before any part of such taxes, assessments and other charges become past due or delinquent and *promptly deliver receipts therefor to beneficiary*; should the grantor fail to make payment of any taxes \* \* \* payable by grantor, *either by direct payment or by providing beneficiary with funds with which to make such payment,* beneficiary may, at its option, make payment thereof \* \* \*." (Emphasis supplied.)

Defendant contends—and it is undisputed—that he never sent plaintiffs a receipt for taxes paid for 1993-94 or the funds with which to pay the taxes. Thus, defendant reasons, plaintiffs were constructively on notice of the tax default and, by continuing to accept installment payments after the property taxes became delinquent on May 15, 1994, waived any default with respect to the tax deficiency.

Plaintiffs respond that defendant's argument attempts to meld two conflicting concepts, constructive notice and waiver. Plaintiffs assert that those concepts are irreconcilable in this context because waiver requires *actual* knowledge of the right being surrendered. Plaintiffs further argue that the mere fact that defendant had breached his obligation to send them a tax receipt or funds to pay property taxes constituted, at most, constructive notice that defendant had breached *those* obligations—not that he had breached his (separate) obligation to pay the taxes. Most simply, the fact that defendant had not sent a tax receipt did not mean he had not paid the taxes.

■        Plaintiffs are correct. Waiver is "the intentional relinquishment of a known right" that must be exercised in some "unequivocal manner." *Waterway Terminals v. P.S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965). To have waived their right to foreclose, plaintiffs must have had knowledge of all pertinent facts, including, most importantly, that defendant was delinquent in the payment of property taxes. *See Grau v. Northwestern Mut. Ins. Co.,* 221 Or 240, 245-46, 350 P2d 1082 (1960) (holding that knowledge of the facts is required

before one can waive a right, and citing Oregon cases that have so held).

Defendant's failure to comply with the deed provision requiring him to submit a tax receipt to plaintiffs did not necessarily demonstrate that defendant had failed to comply with the deed provision requiring him to pay the taxes. Although plaintiffs were surely placed on notice that the former requirement was not observed, that requirement was distinct from the latter. Thus, defendant's default in the first respect did not, as a matter of law, give rise to notice of default, and waiver, with respect to the second.

■ In his second assignment of error, defendant contends that the trial court erred in concluding that it lacked the power in equity to deny plaintiffs their contractual remedy of foreclosure. Defendant asserts that foreclosing on a $35,000 property, toward which a total of $16,753.30 had been paid, based upon a $5.19 shortcoming in a tax payment is unconscionable and inequitable. Plaintiffs respond that they are entitled to their contractual remedies for the nonpayment of taxes and that their action in bringing suit for partial nonpayment of taxes was reasonable.

Defendant's argument is sympathetic and, initially, persuasive. However, where the parties to a land sale contract have made time of the essence, and the purchaser has failed to make required payments, equity has countenanced seemingly rigid and inequitable results. *See, e.g., Kincaid v. Fitzwater*, 257 Or 170, 174, 474 P2d 742 (1970); *Blondell v. Beam*, 243 Or 293, 298, 413 P2d 397 (1966).

In *Kincaid*, the plaintiff sought foreclosure of a land sale contract containing a "time is of the essence" clause due to the defendant's partial nonpayment of taxes. The trial court found the defendant to be in default for partial nonpayment of taxes. However, because the court found the default to be " 'at the most, a technical breach,' " it refused to decree foreclosure. The Supreme Court reversed:

> "The defendants contracted to pay the taxes before they became delinquent. * * * Since defendants chose to breach the contract, plaintiffs were entitled to exercise the remedies provided therein. Neither the trial court nor this court has any authority to modify the contract for either party." 257 Or at 174.

*Blondell* is similar. There, as in *Kincaid*, the plaintiffs sought foreclosure of a land sale contract containing a "time is of the essence" provision because the defendants had defaulted on their obligation to pay taxes. The trial court denied foreclosure on the ground that it would be inequitable, and, instead, ordered reinstatement of the contract upon the defendants' payment of the delinquent taxes. The Supreme Court reversed:

> "Where, as in the instant case, the contract provides for strict foreclosure in the event of a default by the vendees, the contract contains a time-essence clause, the default is material[6] and has not been waived, the plaintiff is entitled to foreclosure in some form as a matter of right. The limit of discretion of a court of equity in such a case is in the determination of the form foreclosure shall take, i.e., strict foreclosure or foreclosure and judicial sale." 243 Or at 298.

Given that authority,[7] we agree with the trial court that, despite the ostensible unfairness of allowing foreclosure in this circumstance, equity does not preclude that result.

Plaintiffs were entitled to foreclosure based upon the tax deficiency. Consequently, we necessarily reject defendant's third assignment of error, which challenges the entry of judgment against his counterclaim for rescission.

Affirmed.

---

[6] Defendant does not argue on appeal that the partial nonpayment of property taxes is not a material default. *See* ORS 312.005 *et seq* (describing county's authority to foreclose on property to recoup delinquent taxes).

[7] Defendant cites one case to support his equity argument: *Highway Com. v. State Construction Co.*, 203 Or 414, 435-37, 280 P2d 370 (1955). That case is materially distinguishable. There, a contractor made a significant mistake in computing his bid for a government construction job. Promptly after discovering the mistake, he notified the State Highway Commission and attempted to withdraw the bid. Nevertheless, the Commission attempted to accept the defendant's original bid. The court concluded that, because no contract was ever formed between the parties and because the Commission did not detrimentally rely on the bid, the court, in equity, could prevent the Commission from attempting to take advantage of an inadvertent error. *Id.* at 436-37. Here, unlike in *Highway Com.*, there was no issue as to contract formation.